Brian C Johnson, *Pro Hac Vice*
Spencer W. Young, *Pro Hac Vice*
**STRONG & HANNI**
102 South 200 East, Suite 800
Salt Lake City, UT 84111
T: (801) 532-7080
F: (801) 596-1508
bjohnson@strongandhanni.com
syoung@strongandhanni.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA, PHOENIX DIVISION**

| | |
|---|---|
| Young at Heart, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>The Atlatl Group, LLC, an Arizona limited liability company doing business as Bravada Yachts; Aaron Browning, an Arizona citizen; Robert Gutierrez, an Arizona citizen; and Andrew Marshall, an Arizona citizen,<br><br>Defendants. | Case No. 2:20-CV-00918-MTL<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND PREJUDGMENT WRIT OF REPLEVIN** |

Pursuant to Federal Rules of Civil Procedure 64(b) and 65, Plaintiff Young at Heart, LLC ("YAH"), respectfully moves this Court for:

1. a temporary restraining order ("TRO") enjoining Defendant The Atlatl Group, LLC ("Bravada"), from selling, liquidating, transferring, or otherwise disposing of the houseboat Bravada contracted to construct for YAH, in whatever form it may be found (the "Houseboat"), as well as all materials and equipment purchased or appropriated by Bravada for construction of the Houseboat pursuant to Section 11.1 of that certain Houseboat Construction Agreement, dated October 23, 2018, between YAH and Bravada, as amended by that certain Amendment to Houseboat Construction Agreement, dated as of August 1, 2019, between YAH and Bravada (the "Agreement"), and compelling Bravada to identify the Houseboat and all such materials and equipment; and

2. a prejudgment writ of replevin permitting YAH to immediately take possession of the Houseboat and all such materials and equipment so identified.

## **INTRODUCTION**

This Court may understandably be tempted to summarily dispose of this Motion by utilizing the Yogi Berra observation "this is déjà vu all over again." YAH, however, respectfully requests the Court carefully consider the Motion. The only way in which the status quo can be maintained in this dispute and YAH can avoid irreparable injury is for this Motion to be promptly granted.

**STATEMENT OF FACTS**

The facts that follow are supported by YAH's Verified Complaint (Dkt. 1) and the exhibits thereto, which YAH filed with the Court on May 12, 2020.

In the fall of 2018, YAH contracted with Bravada for the construction of a houseboat pursuant to the Agreement (the "Houseboat"). YAH is required under the Agreement to make payments that are tied to Bravada's progress on construction of the Houseboat, and YAH timely made the first, second, and third payments, totaling $917,500. Importantly, under Section 11.1 of the Agreement, the Houseboat and "all materials and equipment purchased or appropriated … for its construction" by Bravada became the property of YAH upon YAH's payment of the first progress payment. *See* Agmt. (Dkt. 1-2), ¶ 11.1; *accord* ARIZ. REV. STAT. ANN. § 47-2401(1) (West 2020) (permitting title to pass under a contract to the buyer when goods are identified to the contract).

For its part, Bravada was required under the initial Agreement to deliver the Houseboat on or before June 10, 2019, but failed to meet that deadline, requiring amendment to extend the deadline to April 1, 2020. When the progress to which the fourth aforementioned payment pertained was not completed by early March 2020, YAH retained counsel, who thereafter engaged in communications with an attorney for Bravada.

While conversations were taking place between respective counsel for YAH and Bravada, Bravada again missed its delivery deadline of April 1, 2020. The day Bravada was supposed to make delivery, YAH through counsel sent an offer to Bravada, in which YAH offered to escrow all remaining payments due from YAH in accord with the Agreement and to extend the delivery date for the Houseboat to February 1, 2021. Counsel for YAH continued to reiterate the offer in letters sent to Bravada on April 14, 2020 and April 21, 2020.

However, Bravada insisted the requisite progress was complete, and oddly focused on immediate payment for a change order that (under Section 3.2 of the Agreement) was not due until YAH had certified the appropriate amount of progress. YAH more than once requested an inspection of Bravada's progress on construction of the Houseboat, to which inspection YAH is given an absolute right (subject only to a scheduled appointment) under the Agreement,[1] but Bravada ignored the request, instead continuing to unjustifiably demand payment for the aforementioned change order. In fact, Bravada threatened to sell the Houseboat if YAH did not comply with the demand for payment, notwithstanding YAH's aforementioned property interest in the Houseboat and all materials and equipment identified for its construction. Research by YAH's counsel revealed IRS tax liens totaling almost $1 million filed

[1] The stated purpose for these inspections is to "inspect the progress of construction." *See* Agmt. (Dkt. 1-2) ¶ 7.1.

against Bravada, which, coupled with its unjustified demand for payment, suggested Bravada was having cash flow issues.

It was only thereafter that YAH discovered Bravada had been sued by another plaintiff, also based in Utah, called Revenant Entertainment, LLC.[2] That lawsuit also involved a contract for construction of a houseboat, and alleged that an investigation by the plaintiff of Bravada's progress on that construction, in the wake of Bravada's similar demands for payment, revealed that Bravada had not started on construction of the plaintiff's houseboat at all.

**POSTURE OF THE CASE**

That led YAH to file suit, and hereby seek the help of the Court in enforcing YAH's property right under Section 11.1 of the Agreement. On May 13, 2020, the day after filing suit, YAH filed an Emergency Motion for Expedited Discovery (Dkt. 5), requesting an inspection (as is YAH's right under the Agreement) to identify the state of affairs, including whether or not Bravada had even begun construction of the Houseboat.

The Court ruled on that motion until five days later, on May 18, 2020. The Court denied the motion because YAH "has not shown why the extraordinary

[2] *Revenant Entm't, LLC v. The Atlatl Group, LLC, et al.*, No. 2:20-CV-00578-DWL (D.Ariz., filed April 22, 2020).

remedy of early discovery is warranted at this juncture."[3] Order (Dkt. 11). YAH interpreted the Court's Order to mean the Court believes YAH does not yet have evidence to show that Bravada has not begun construction of the Houseboat—a fact YAH hoped to ascertain with the inspection requested in the motion.

Accordingly, YAH now proceeds as though Bravada has, in fact, started the construction of the Houseboat, and because of (1) Bravada's second failure to deliver the Houseboat on time (as required under the Agreement) and (2) YAH's property right to the Houseboat and all materials and equipment identified to its construction, YAH seeks to (a) enjoin Bravada from selling, liquidating, transferring, or otherwise disposing of the Houseboat or any such materials and equipment; (b) compel Bravada to identify the Houseboat and any such materials and equipment, as it is required to do under the Agreement, if it has not done so already; and (c) replevy the Houseboat and all such materials and equipment, to deliver them to another builder who can timely complete construction.

## LEGAL ARGUMENT

Having not yet been permitted to conduct the inspection it requested with its Emergency Motion for Expedited Discovery (Dkt. 5) and to which it is entitled under

[3] YAH's counsel apparently did not make it clear to the Court that YAH is granted an absolute right to the requested inspection under the Agreement, which inspection Bravada has refused. To the extent counsel did so, he apologizes. YAH is not seeking to accelerate the discovery process in this case so much as it is attempting to enforce its contract right to inspect before its too late and the right becomes valueless.

clear terms of the Agreement, YAH is "flying blind" in its attempt to exercise its right to replevin under the Agreement—to wit, YAH hasn't a clue whether Bravada has upheld its obligation under the Agreement to identify all materials and equipment for the construction of the Houseboat, or what, if any, progress Bravada has made on the construction of the Houseboat. Accordingly, YAH seeks with this motion both (a) a temporary restraining order to (i) preclude Bravada from selling, liquidating, or otherwise transferring the Houseboat or any materials or equipment identified for its construction and (ii) compel Bravada to identify both the Houseboat and all such materials or equipment, if it has not done so already, and (b) a prejudgment writ of replevin permitting YAH to take possession of the Houseboat and all materials and equipment so identified.

For the reasons that follow, this motion should be granted.

## I. YAH Is Entitled to a Temporary Restraining Order Precluding Bravada from Disposing of the Houseboat and Requiring Bravada to Comply with Its Contractual Obligations.

"In deciding whether to grant a motion for TRO, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction." *Innovation Law Lab v. Nielsen*, 310 F.Supp.3d 1150, 1156 (D.Or. 2018) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.2 (9th Cir. 2001)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

Because (a) YAH is likely to succeed on the merits of its claim, (b) YAH is likely to suffer irreparable harm if the requested relief is not granted, (c) the balance of equities tilts in YAH's favor, and (d) the relief hereby requested is in the public interest, YAH is entitled to a temporary restraining order.

***a. YAH Is Likely to Succeed on the Merits of Its Breach of Contract Claim.***

At an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits or questions serious enough to require litigation. *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009). In the case at bar, the relevant claim is YAH's claim that Bravada breached its obligations under the Agreement by failing to timely deliver the completed Houseboat by April 1, 2020, and YAH is likely to succeed on the merits of that claim.

Under Arizona law, a claim for breach of contract must show "the existence of a contract, its breach and the resulting damages." *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013) (*en banc*).

First, there is a legal and enforceable contract between YAH and Bravada, as reflected in the Agreement.[4] Section 11.1 of the Agreement unequivocally provides that YAH acquired all property rights to the Houseboat, and to all materials and equipment purchased for its construction, upon YAH's payment of the first progress payment, which YAH has paid (along with the second and third such payments, for a total of $917,500). Title to goods can pass under a contract of sale if specific goods have been identified as the objects to be sold pursuant to the terms of the agreement. *U.S. v. Long*, 706 F.2d 1044, 1049 (9th Cir. 1983); *accord* ARIZ. REV. STAT. § 47-2401. Accordingly, because YAH timely made the first payment, YAH has a special property interest in the Houseboat and all materials and equipment purchased for its construction, both under the Agreement and under Arizona's Uniform Commercial Code. *See id.*

Second, YAH fully performed all of its obligation under the Agreement, including by (a) timely making the first, second, and third Progress Payments; and (b) requesting to inspect the progress of Bravada's construction of the Houseboat, in order to certify the progress to which the fourth Progress Payment pertained,[5] as was required under the Agreement for the fourth Progress Payment to become due.[6]

---

[4] *See* Houseboat Constr. Agmt. (Dkt. 1-2), Amendment to Houseboat Constr. Agmt. (Dkt. 1-3).

[5] *See* Houseboat Constr. Agmt. (Dkt. 1-2), ¶ 7.1 (giving YAH the right to inspect the progress Bravada was making on the Houseboat).

[6] *Id.* ¶ 3.2.

Third, Bravada breached its obligations under the Agreement, by at the very least (a) failing to deliver the promised Houseboat on or before April 1, 2020;[7] and (b) failing to permit an inspection for YAH to ascertain Bravada's progress on the construction of the Houseboat, despite repeat demands to do so.[8]

Fourth, Bravada's breaches and threats to sell or dispose of YAH's property have damaged and will irreparably harm YAH as discussed below.

Accordingly, YAH is likely to succeed on the merits of its claims. At the very least, this case presents serious issues on the merits which should be the subject of further litigation.

***b. Because the Houseboat Is a Unique and Customized Good, YAH Will Likely Suffer Irreparable Harm if the Court Does Not Grant YAH the Requested Temporary Restraining Order.***

For purposes of injunctive relief, irreparable harm "is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

This Court recently found irreparable harm when a plaintiff sought to enjoin a defendant from selling a unique and rare diamond before an adjudication of the parties' respective rights to the diamond. *Mellen Inc. v. Loan*, No. 2:16-CV-00648-DLR, 2016 WL 3144165, *6 (D.Ariz., June 6, 2016). Similarly, other district courts

---

[7] *See* Amendment to Houseboat Constr. Agmt. (Dkt. 1-3), at 2 (providing for launch date on or before April 1, 2020).

[8] *See* note 5, *supra*.

in this Circuit have found irreparable harm in the sale of unique personal property. *FTC v. Kutzner*, No. 8:16-CV-00999-DOC-AFM, 2017 WL 5188334, *9 (C.D.Cal., Mar. 10, 2017) (enjoining receiver from selling a men's Rolex watch, two Chanel watches, and a Boucheron necklace valued at a total of $119,633, because they were "valuable and unique pieces of jewelry" and their sale would constitute irreparable harm); *Abuzeide v. Openroad Auto Grp., Inc.*, No. 2:17-CV-00583-RSM, 2017 WL 1398930, *3 (W.D.Wash., April 19, 2017) (on motion for TRO and writ of replevin for stolen Porsche, finding irreparable harm to support TRO where failure to grant the requested relief would undermine movant's replevin right).

Furthermore, the Ninth Circuit has held that trial courts have the "authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant," or has engaged in other acts to evade judgment. *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994).

In the case at bar, Bravada has threatened to sell the Houseboat to make good on the payments it claims to be owned by YAH,[9] even though those payments are in no way owed until YAH certifies the progress on construction of the Houseboat to

[9] *See* Mar. 27, 2020 McGee Ltr. (Dkt. 1-5), at 3 (threatening to exercise remedies of Bravada in Section 4.3 of the Agreement); *accord* Houseboat Constr. Agmt. (Dkt. 1-2) ¶ 4.3 (providing the sale of the Houseboat as a remedy).

which those payments pertains.[10] The Houseboat is unique, and has been customized to suit the tastes of YAH and its members.[11] Just like in *Mellen* and *Kutzner*, then, YAH is likely to suffer irreparable harm if the Court does not grant YAH the TRO hereby requested and Bravada is permitted to sell, liquidate, transfer, or otherwise dispose of the Houseboat in violation of YAH's property rights.

Furthermore, just in like in *Abuzeide*, a denial of YAH's request for a TRO in the face of Bravada's threat to sell the Houseboat would effectively nullify YAH's replevin right under Arizona law, constituting further evidence of irreparable harm. Accordingly, both the uniqueness of the Houseboat and the effect that a disposal of the Houseboat would have on YAH's replevin rights constitute irreparable harm.

Finally, even if the Court is unwilling to find irreparable harm on either such ground, YAH has uncovered nearly $1 million in tax liens and another lawsuit (also by a Utah-based LLC) showing that Bravada is likely insolvent, which also goes to demonstrate the irreparable harm YAH would suffer if it is not allowed to enjoin the sale of and replevy the Houseboat and all materials and equipment purchased for its construction, as hereby requested.

---

[10] *Id.* ¶ 3.2.

[11] *See* Mar. 27, 2020 McGee Ltr. (Dkt. 1-5), at 1 (Bravada's attorney describing the construction of the Houseboat as "a long, collaborative process of customization and accommodation"). YAH only offers this letter for the Court's consideration to show Bravada's likely arguments, not to show liability or amount. *See* Fed. R. Evid. 408.

Therefore, because the Houseboat is unique, because a denial of the TRO that YAH hereby seeks would nullify its replevin rights under Arizona law, and because good evidence exists to suggest Bravada is insolvent, YAH is likely to suffer harm that cannot be accounted for in money damages, if the Court denies this motion.

***c. The Balance of Equities Favors YAH Because YAH Has Already Given Bravada One Extension of the Delivery Date.***

The third element YAH is required to demonstrate for its TRO is that a balance of the equities favors YAH. In the case at bar, YAH has *already* given Bravada one extension of time to complete the Houseboat, of almost 10 months.[12] Despite such an extension, Bravada has still failed to timely complete and deliver the Houseboat for which YAH has paid Bravada almost $1 million. YAH should not be required to indulge Bravada's delays any further.

The Court may be tempted to indulge the arguments of "delay" made by the lawyer for Bravada in his March 27, 2020 letter.[13] But those arguments bear no merit because they fail to account for the fact that payments Bravada's lawyer alleges to be owed do not, by the plain and unambiguous terms of the Agreement, become due until YAH has an opportunity to inspect the progress being made on the Houseboat

[12] *Compare* Houseboat Constr. Agmt. (Dkt. 1-2), at 8 (showing "launch date" of Jun. 10, 2019) *with* Amendment to Houseboat Constr. Agmt. (Dkt. 1-3), at 2 (adjusting "launch date" to Apr. 1, 2020).

[13] Mar. 27, 2020 McGee Ltr. (Dkt. 1-5).

and certify the same, which inspection is *exactly* what YAH sought in its first letter to Bravada,[14] but Bravada ignored that request.

Therefore, because YAH has already given Bravada one extension of the date on which delivery of the Houseboat was to be made, and because Bravada's "delay" argument bears no merit in light of the plain terms of the Agreement, the balance of equities clearly favors YAH, and the Court should grant this motion.

***d. The Public Has an Interest in Upholding Enforceable Contracts.***

As this Court once held, "there is 'a public interest in upholding enforceable contracts.'" *Ajilon Professional Staffing, LLC v. Griffin*, No. 2:09-CV-00561-PHX-DGC, 2009 WL 976522, *3 (D. Ariz. April 10, 2009) (quoting *Universal Engraving, Inc. v. Duarte,* 519 F.Supp.2d 1140, (D. Kan. 2007)). Because YAH seeks to enforce a valid and existing contractual right, issuance of the TRO would not be averse to, and would actually further, the public interest. As discussed, the TRO is necessary to enjoin Bravada from selling the Houseboat, an act which would amount to theft, given YAH's property interest in the Houseboat under the Agreement. *See Abuzeide*, *supra*. The requested TRO would preclude Bravada from ignoring such interest and enforce the Agreement. Accordingly, issuance of the TRO is in the public interest.

[14] Mar. 9, 2020 Ltr. (Dkt. 1-4).

***e. Notice of This Motion Has Been Provided to Bravada.***

Shortly after YAH provided Bravada with a copy of the Emergency Motion for Expedited Discovery (Dkt. 5), Bravada's lawyer, Robert McGee, contacted the undersigned counsel. *See* E-mail Correspondence (**Exhibit A**). While the ensuing conversation did nothing to resolve the dispute, it nevertheless made unequivocally clear that Bravada has notice of this action. Bravada has yet to make an appearance.

Nevertheless, out of an abundance of caution, YAH is providing notice of this motion to Bravada by both mail and e-mail, as reflected in the certificate of service attached hereto. YAH has no issue having a contested hearing on this Motion; it just needs a disposition of its request for the relief hereby requested as soon as possible.

***f. The Court Should Grant YAH a TRO Against Bravada.***

Because YAH with this motion merely seeks to exercise its clear, unequivocal property rights to the Houseboat and require Bravada to comply with its contractual obligations to identify both the Houseboat and all materials and equipment Bravada purchased for use in the construction of the Houseboat, and for all the other reasons set forth above, the Court should grant this motion and enter a TRO against Bravada, as hereby requested.

## II. YAH Is Entitled to Replevin by Its Property Interest in the Houseboat and Bravada's Breach of the Agreement.

Rule 64 of the Federal Rules of Civil Procedure governs YAH's request for a prejudgment writ of replevin, and provides as follows:

> *At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.*

Fed. R. Civ. P. 64(a); *accord id.* R. 64(b) (listing "replevin" as one remedy available under Rule 64(a), "however designated and regardless of whether state procedure requires an independent action").

Under Arizona law, the "purpose of prejudgment replevin proceedings is to enable a plaintiff to seize the property prior to entry of judgment against defendant." *First Nat'l Bank of Ariz. v. Superior Ct. of Maricopa Cnty.*, 541 P.2d 392, 395 (Ariz. 1975) (*en banc*). The remedy of replevin under Arizona law is governed by Section 12-1301 of the Arizona Revised Statutes, which requires a plaintiff seeking replevy to "file an affidavit showing:

> 1. *That he is the owner of the property claimed, sufficiently describing it, or is lawfully entitled to its possession.*
> 2. *That the property is wrongfully detained by the defendant.*
> 3. *The actual value of the property and that it has not been seized under any process, execution, or attachment against the property of the plaintiff, or, if so seized, that it is by statute exempt from such seizure.*

ARIZ. REV. STAT. ANN. § 12-1301. Title 28, Section 1746 of the United States Code permits unsworn verifications made under penalty of perjury in lieu of an affidavit. 28 U.S.C.A. § 1746 (West 2020); *accord* Verified Compl. (Dkt. 1), at 15.

Finally, Section 2-502 of the Arizona Uniform Commercial Code gives the buyer a right to recover goods identified to a contract from a seller if, in "the case of goods bought for personal, family, or household purposes, the seller repudiates or fails to deliver as required by the contract," ARIZ. REV. STAT. ANN. § 47-2502(A)(1), and Section 2-716(C) of the Code provides as follows:

> *The buyer has a right of replevin for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered. In the case of goods bought for personal, family or household purposes, the buyer's right of replevin vests on the acquisition of a special property, even if the seller had not then repudiated or failed to deliver.*

*Id.* § 47-2716. A buyer acquires a special property in the goods at the time of their identification to the contract. *Id.* § 47-2401(1).

Because YAH has a clear and unequivocal property interest in the Houseboat, because Bravada failed to deliver the Houseboat by April 1, 2020, as required by the Agreement and has therefore wrongfully detained it, and because YAH paid Bravada almost $1 million for a half-finished Houseboat that has not been seized by Bravada in the exercise of any legal right, YAH is entitled to replevy the Houseboat under Arizona law.

***a. The Agreement Gives YAH a Clear and Unequivocal Property Right to the Houseboat.***

In a replevin action, the "plaintiff must recover on the strength of his own title and right of possession and not on the weakness of that of his adversary." *Valley Nat. Bank of Phoenix v. Siebrand*, 243 P.2d 771, 776 (Ariz. 1952). Furthermore, title to goods can pass under a contract of sale if specific goods have been identified as the objects to be sold pursuant to the terms of the agreement. *U.S. v. Long*, 706 F.2d 1044, 1049 (9th Cir. 1983) (citing U.C.C. §2-401); *accord* ARIZ. REV. STAT. ANN. § 47-2401 (giving a buyer special title to goods identified to a contract).

In the case at bar, Section 11.1 of the Agreement unequivocally provides that YAH holds all property rights to the Houseboat and to all materials and equipment purchased and identified by Bravada for the Houseboat's construction. True, Section 11.4 of the Agreement gives Bravada what is effectively a lien against the Houseboat to secure payments,[15] but that only entitles Bravada to foreclose on the Houseboat if YAH breaches the Agreement. The only way in which Bravada claims YAH to have breached the Agreement is by failure to make payments that only become due when YAH has certified the progress to which they pertain,[16] which YAH can only do with an inspection of the Houseboat, which Bravada has denied YAH.

---

[15] *See* ARIZ. REV. STAT. ANN. § 47-2401(1) (providing that any reservation by a seller of rights to goods identified to the contract is a security interest).

[16] *Compare generally* Mar. 27, 2020 McGee Ltr. (Dkt. 1-5) *with* Houseboat Constr. Agmt. (Dkt. 1-2) ¶ 3.2.

Therefore, there is no question of YAH's title to the Houseboat under the Agreement and applicable law because Bravada denied YAH its right to inspect the Houseboat, precluding YAH from certifying any progress on the construction of the Houseboat, which is the only event that triggers YAH's obligation to pay Bravada the fourth progress payment under Section 3.2 of the Agreement.

***b. Bravada Has Breached Its Obligation to Timely Deliver the Completed Houseboat and Therefore Wrongfully Detained It.***

Generally, "replevin will not lie against one who has obtained possession of the property lawfully, until a proper demand is made for the same and possession is refused." *Mosher v. Rowe*, 224 P. 1065, 1066 (Ariz. 1924). However, in replevin for an automobile, the Supreme Court of Arizona held no formal demand was necessary before suit, where it appeared plaintiff had made repeated efforts to obtain the car from defendant before suing. *Yates v. Russell*, 180 P. 910 (Ariz. 1919).

In this case, Bravada was obligated to deliver the completed Houseboat on or before April 1, 2020, to YAH. Bravada failed to do so, despite already receiving one almost-ten-month extension of time. YAH has made repeat efforts to afford Bravada yet another extension of time to complete construction of the Houseboat, which were refused by Bravada. These efforts to obtain a completed Houseboat constitute at least an informal demand under *Yates*, and Bravada's refusal of such efforts put Bravada in breach of the Agreement for failure to timely deliver the completed Houseboat to

YAH by April 1, 2020. Bravada has therefore wrongfully detained the Houseboat to which YAH holds all property rights, as discussed above.

***c. YAH Has Stated the Value of the Houseboat in Its Current State and the Houseboat Has Not Been Seized from YAH.***

A statement of the value in an affidavit is only for the purpose of fixing the amount of the replevin and redelivery bonds. *Consolidated Nat. Bank of Tucson v. Cunningham*, 210 P. 850, 852 (Ariz. 1922). In this case, no bond should be required because YAH has already paid almost $1 million to Bravada in the first, second, and third progress payments under the Agreement. While the parties may litigate about Bravada's entitlement to such sums in light of the progress (or lack thereof) Bravada has made on construction of the Houseboat, there is no question Bravada is in receipt of more than enough money from YAH to cover any damages.

Furthermore, as YAH's Verified Complaint (Dkt. 1) makes clear, Bravada is only in possession of the Houseboat because it contracted with YAH to construct it. The Houseboat has therefore not been seized or otherwise detained by Bravada in the exercise of a legal remedy.

## CONCLUSION

For the foregoing reasons, YAH respectfully requests the Court do as follows:

(a) enter a temporary restraining order against Bravada that both:

(i) enjoins Bravada from selling, liquidating, transferring, or otherwise disposing of the Houseboat or any of the materials or equipment

purchased by Bravada for construction thereof or otherwise identified to the Agreement; and

(ii) compels Bravada to identify the Houseboat and all materials and equipment purchased by Bravada for construction thereof or otherwise identified to the Agreement; and

(b) issue a prejudgment writ of replevin that permits YAH to repossess the Houseboat and all materials and equipment purchased by Bravada for construction thereof or otherwise identified by Bravada to the Agreement.

Pursuant to Local Rule 7.1(b)(2), a proposed temporary restraining order and prejudgment writ of replevin is being filed concurrently herewith.

DATED this 28th day of May, 2020.

STRONG & HANNI

*/s/ Brian C Johnson*
Brian C Johnson
Spencer W. Young
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 28th day of May, 2020, a true and correct copy of the foregoing MOTION FOR TEMPORARY RESTRAINING ORDER AND PREJUDGMENT WRIT OF REPLEVIN, with any exhibits and attachments, was served upon the following by the method respectively indicated below:

| | | |
|---|---|---|
| The Atlatl Group, LLC | ( ) | U.S. Mail, Postage Prepaid |
| c/o Aaron Browning | ( ) | Hand Delivery |
| 9310 W Buckeye Rd | (X) | Overnight Mail |
| Suite 200 | ( ) | Facsimile |
| Tolleson, AZ 85353 | ( ) | Electronic Filing |
| aaron@bravadayachts.com | (X) | E-mail |

| | | |
|---|---|---|
| Robert J. McGee | ( ) | U.S. Mail, Postage Prepaid |
| LAW OFFICE OF DAVID | ( ) | Hand Delivery |
| W. HUDSPETH | (X) | Overnight Mail |
| 3200 North Central Avenue | ( ) | Facsimile |
| Suite 2500 | ( ) | Electronic Filing |
| Phoenix, AZ 85012 | (X) | E-mail |

*Counsel for The Atlatl Group, LLC, During Settlement Talks*

*/ s / Sariah Runnells*
Sariah Runnells
*Legal Assistant*